**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| LAVONE CHAPMAN-ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:19-cv-01128 |
| v. | ) | Judge Eli J. Richardson |
| | ) | Magistrate Judge Holmes |
| TENNESSEE DEPARTMENT | ) | |
| OF TRANSPORTATION, | ) | |
| | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED COMPLAINT**

---

Defendant Tennessee Department of Transportation ("TDOT" or "Department") submits this Memorandum of Law in support of its Motion for Partial Dismissal of First Amended Complaint. The Department respectfully moves this Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all but one of Plaintiff's claims.

## INTRODUCTION

This is an employment discrimination case involving alleged violations of state and federal law. Lavone Chapman-Robbins, a current employee, seeks to hold the Department liable for the sexually harassing text messages she received from a male co-worker, what she contends was an ineffective response to her complaint of sexual harassment, and for conduct she purportedly suffered in retaliation for her complaint. Plaintiff grounds her claims in state law, Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

1

Plaintiff's state law claims must be dismissed because they are barred by the Department's Eleventh Amendment immunity. Plaintiff's Title IX claims similarly must be dismissed because the First Amended Complaint fails to plead that Plaintiff experienced sex-based discrimination in an education program or activity. And Plaintiff's Title VII hostile work environment claim must be dismissed because the alleged facts demonstrate that TDOT promptly and effectively responded to Plaintiff's report of harassment.

## ALLEGED FACTS[1]

The Department hired Plaintiff Lavone Chapman-Robbins in October 2018 as an Operations Technician based out of the Franklin, Tennessee office. (ECF No. 16, ¶ 7.) Operations Technicians receive daily job assignments from their supervisor. (*Id.* at ¶¶ 8-9.) Job assignments vary and include tasks such as controlling traffic, maintaining roads and their immediate surroundings, making repairs, and providing quality assurance. (*Id.* at ¶ 8.) Operations Technicians work independently and in teams. (*See id.* at ¶¶ 8, 26.)

Early in Plaintiff's tenure with the Department, she began receiving text messages from co-worker Marty Dillon. (*Id.* at ¶ 10.) The messages contained images and text conveying Dillon's "perverted sexual desires for [Plaintiff.]" (*Id.*) Plaintiff regarded the text messages as sexual harassment and reported Dillon's behavior to unspecified TDOT personnel. (*Id.* ¶¶ 10, 12.) Plaintiff also reported an instance where Dillon grabbed her, presumably at work, and held on to her despite her objections. (*Id.* at ¶¶ 11-12.) TDOT appropriately responded by investigating Plaintiff's complaint and transferring Dillon from the Franklin office during the pendency of the investigation. (*See id.* at ¶¶ 12-13, 19.) Once Plaintiff reported Dillon, she experienced no further

---

[1] Consistent with the standard of review applicable to Rule 12(b)(6) motions to dismiss, the facts are taken from the First Amended Complaint and are accepted as true for purposes of this Motion only. Fed. R. Civ. P. 12(b)(6). Defendant reserves the right to later dispute these facts.

sexual harassment. (*See id.* at ¶¶ 12-33.)

TDOT completed its investigation into Plaintiff's allegations against Dillon, found they were supported, and fired Dillon for violating Department policy. (*Id.* at ¶¶ 18-20.) After his termination, Dillon contacted Plaintiff. (*Id.* at ¶ 21.) He sent her a text message containing an image of a person in a rifle sight. (*Id.*) Plaintiff felt threatened by the message, but she did not report it to law enforcement. (*See id.* at ¶¶ 21-33.) Instead, she reported Dillon's message to TDOT. (*Id.* at ¶ 22.) Plaintiff now seeks to hold TDOT responsible for the conduct of a *former* employee, claiming that "no effort has been made [by the Department] to protect [Plaintiff] from continuing harassment by Mr. Dillon." (*Id.* at ¶ 24.) Although Plaintiff complains that TDOT's efforts to protect her were inadequate, she had no communications or interactions with Dillon after reporting the rifle sight message. (*See id.* at ¶¶ 22-33.)

Plaintiff alleges that her complaint against Dillon affected her work relationships and activities. (*See id.* at ¶¶ 15, 26-29.) Plaintiff claims that a male supervisor "told her that because of her, he is losing one of his best guys." (*Id.* at ¶ 15.) Plaintiff also maintains that, following her filing of an Equal Employment Opportunity Commission ("EEOC") charge, her daily job assignments changed. (*Id.* at ¶ 26.) She is no longer assigned to group or team tasks, and her job assignments more frequently involve measuring road lines and picking up roadside trash. (*Id.*) Plaintiff further asserts that an unnamed "EEO officer at TDOT engaged in a pattern of harassment, humiliation, and intimidation of [Plaintiff]," and Ray Hudson, her supervisor, "retaliate[ed] against her and treat[ed] her poorly." (*Id.* at ¶¶ 27, 29.)

Plaintiff reported what she believed was retaliation from Hudson and filed a written complaint with TDOT in June 2019. (*Id.* at ¶ 29.) TDOT investigated the complaint and concluded that no policy violations occurred. (*Id.* at ¶ 31.) Dissatisfied with the investigation's outcome,

Plaintiff filed this lawsuit in December 2019. Plaintiff asserts seven causes of action based on her allegations of sexual harassment, sex discrimination, and retaliation: a Title IX claim; claims of discrimination and retaliation under the Tennessee Human Rights Act; an assault and battery claim; an intentional infliction of emotional distress claim; and claims of hostile work environment and retaliation under Title VII. (*Id.* at ¶¶ 33-68.)

## STANDARDS OF REVIEW

Defendant moves to dismiss Plaintiff's four state law claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction is a proper vehicle to assert Eleventh Amendment immunity. *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 627 (6th Cir. 2001) (trial court properly dismissed a claim for lack of subject matter jurisdiction based on the defendant's Eleventh Amendment immunity); *Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 (E.D. Mich. 2015); *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012); *Henderson v. Sw. Tennessee Cmty. Coll.*, 282 F. Supp. 2d 804, 806 (W.D. Tenn. 2003). Courts construe the allegations of a complaint in the light most favorable to the plaintiff when ruling on a 12(b)(1) motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997). Plaintiff has the burden of proving that the court has subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). If this Court determines that it lacks subject matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Defendant also moves to dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the complaint must contain

4

sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. To meet the plausibility standard, the complaint must show "more than a sheer possibility that the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. While the court will accept the complaint's factual allegations as true, this assumption of veracity does not extend to legal conclusions, including legal conclusions couched as factual allegations. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to overcome a Rule 12(b)(6) motion to dismiss. *Id*.

## LEGAL ARGUMENT

I. **THE STATE'S SOVEREIGN IMMUNITY DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S TENNESSEE HUMAN RIGHTS ACT AND INTENTIONAL TORT CLAIMS.**

Plaintiff seeks to hold the Department liable for alleged violations of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 *et seq.*, ("THRA") and the commission of intentional torts. (ECF No. 16, ¶¶ 40-58.) These four state-law claims must be dismissed because the State's sovereign immunity bars this Court from exercising subject matter jurisdiction.

It is a well-settled principle of constitutional and statutory law in this state that "[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." *Brewington v. Brewington*, 215 Tenn. 475, 480, 387 S.W.2d 777, 779 (1965). The doctrine of sovereign immunity "has been a part of the common law of Tennessee for more than a century and [it] provides that suit may not be brought against a governmental entity unless that governmental entity

has consented to be sued." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). Sovereign immunity is also rooted in the Tennessee Constitution, which provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. The Sixth Circuit has interpreted this passage of the Tennessee Constitution as barring suits against the State unless expressly authorized by the legislature. *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1999) (citing *Greenhill v. Carpenter*, 718 S.W.2d 268, 270 (Tenn. Ct. App. 1986)). The State of Tennessee's "constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original).

A.   **The State has not consented to suit in federal court for alleged violations of the Tennessee Human Rights Act.**

This Court lacks jurisdiction over Plaintiff's THRA claims. The THRA waives the State's sovereign immunity by defining "employer" to include "the state, or any political subdivision thereof." Tenn. Code Ann. § 4-21-102(5). But the waiver is subject to jurisdictional limitations. *See id.* at §§ 4-21-302, 307, 311. The Act establishes three avenues for pursuing a claim: (1) file a complaint with the Tennessee Human Rights Commission ("Commission"); (2) seek circuit or chancery court review of a decision by the Commission; and (3) bring an action in chancery or circuit court. *Id.* None of these avenues involve filing suit in federal court. *Id.* Because the THRA authorizes actions only in state court, it lacks the "clear declaration" or "unequivocal expression" needed for a state to waive its immunity in federal court. *See Pennhurst*, 465 U.S. at 99 (emphasizing that a State's consent to suit in federal court must be unambiguous). Federal courts have consistently and repeatedly reached this conclusion and held that the State and its agencies are immune from suit in federal court under the THRA. *See, e.g.*, *Boinapally v. Univ. of Tenn.*, 23 F. App'x 512, 515 (6th Cir. 2001); *Banerjee v. Univ. of Tennessee*, No. 3:17-CV-526,

6

2019 WL 7283128, at *3 (E.D. Tenn. Jan. 16, 2019) (describing the State's Eleventh Amendment immunity as "a jurisdictional bar" to the plaintiff's THRA claim); *Miller v. Tennessee Dep't of Human Servs.*, No. CV 3-15-1025, 2016 WL 3213641, at *3 (M.D. Tenn. June 10, 2016) (stating "[f]ederal courts in Tennessee have consistently held that suits against state entities brought by individuals under the THRA in federal court are disallowed by the Eleventh Amendment" and collecting cases). Since the legislature waived the State's immunity under the THRA only for state court actions, TDOT is immune from Plaintiff's two THRA claims in this Court, and they must be dismissed.

### B.    The State has not waived its sovereign immunity for intentional torts.

This Court lacks jurisdiction over Plaintiff's intentional tort claims. As a sovereign, the State cannot be sued absent its express consent. *Woolsey*, 932 F.2d at 565. Plaintiff here seeks to hold the Department liable for intentional torts allegedly committed by its employees. (ECF No. 16, ¶¶ 49-58.) The issue is therefore whether the State has unequivocally consented to suit for intentional torts. It has not. While the Claims Commission Act, Tenn. Code Ann. §§ 9-8-301 *et seq.*, waived the State's immunity for specific categories of claims, if a claim falls outside the enumerated categories, the State retains immunity from suit. *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000). The Claims Commission Act does not authorize intentional tort claims against the State, but even if it did, jurisdiction would reside exclusively with the Claims Commission. *See* Tenn. Code Ann. § 9-8-307(a); *Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995) (Claims Commission does not have jurisdiction over intentional torts). Indeed, the Claims Commission Act provides, "the [S]tate will not be liable for willful, malicious, or criminal acts by state employees." Tenn. Code Ann. § 9-8-307(d) (emphasis added). The State thus retains immunity from intentional tort claims, and Plaintiff's assault, battery, and intentional infliction of emotional

7

distress claims are barred and must be dismissed.[2]  *See* Tenn. Code Ann. § 9-8-307(a); *Shell*, 893 S.W.2d at 421.

## II. PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM UNDER TITLE IX.

Plaintiff asserts a Title IX claim premised on two allegations: the Department "receives federal funding for . . . training and education services;" and Plaintiff "was subjected to discrimination and retaliation based on her sex." (ECF No. 16, ¶¶ 3, 37.)  This is inadequate to state a claim under Title IX.  These allegations neither demonstrate that Plaintiff is protected by Title IX nor trigger a claim for actions precluded by the statute.

### A. Plaintiff's Title IX claim fails as a matter of law because Plaintiff is not protected by Title IX.

Plaintiff's failure to set forth facts evidencing her employment's educational features or mission is fatal to her Title IX claim.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in . . . or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a) (emphasis added).  A "program or activity" includes all operations of a state government agency any part of which receives federal financial assistance.  *Id.* at § 1687.  The meaning of "education program or activity" is less clear, as neither Title IX nor its regulations define the phrase.  *See* 20 U.S.C. §§ 1681 *et seq.*; 34 C.F.R. §§ 106.1 *et seq.*  The Third Circuit's recent construction of "education program or activity" is instructive here.

In *Doe v. Mercy Catholic Medical Center*, the Third Circuit considered when is a "program or activity" under § 1687 an "<u>education</u> program or activity" under §1681. 850 F.3d 545 (3d Cir.

---

[2] Plaintiff requests punitive damages associated with her assault and battery claim.  (ECF No. 16, ¶ 51.)  This request must be denied because the State cannot be liable for punitive damages.  Tenn. Code Ann. § 9-8-307(d).

Case 3:19-cv-01128   Document 21   Filed 04/01/20   Page 8 of 16 PageID #: 100

2017) (emphasis added). In analyzing the issue, the Third Circuit considered Title IX's language, structure, history, and construction by other courts. *Id.* at 553-55. The *Doe* court ultimately adopted the Second Circuit's definition and held that a "program or activity" under § 1687 is an "education program or activity" under 1681(a) if the program or activity has "features such that one could reasonably consider its mission to be, at least in part, educational." *Id.* at 555 (quoting *O'Connor v. Davis*, 126 F. 3d 112, 117 (2d Cir. 1997)). This construction of "education program or activity" aligns with precedent in the Eighth and Ninth Circuits and with how myriad federal agencies, including the Department of Education, interpret Title IX. *Id.* (citing *Klinger v. Dep't of Corrs.*, 107 F.3d 609, 613-16 (8th Cir. 1997); *Jeldness v. Pearce*, 30 F.3d 1220, 1224-25 (9th Cir. 1994); 34 C.F.R. § 106.1; 45 C.F.R. § 86.1[3]). Accordingly, a program or activity is an "education program or activity" subject to Title IX if it has educational characteristics. *Id.* at 556

The Department receives federal funds. (ECF No. 16, ¶¶ 3, 34.) The Department's operations are therefore considered a "program or activity" under § 1687. 20 U.S.C. § 1687. The next step in the analysis is to determine whether Plaintiff has shown that she "was excluded from participation in," "denied the benefits of," or "was subject to discrimination under any education program or activity" at the Department. *Id.* at 1681 (emphasis added). She has not. The First Amended Complaint does not establish that Plaintiff was discriminated against in a program or activity with educational characteristics. (*See generally* ECF No. 16.) Instead, the discrimination occurred in an employment context. (*Id.* at ¶¶ 7-33.) Plaintiff asserts that she experienced sexual harassment from a co-worker while controlling traffic, maintaining roadways, performing repairs, and providing quality assurance as an Operations Technician for TDOT. (*See id.* at ¶¶ 7-8, 10-

---

[3] Both regulations state that Title IX applies to "any" education program or activity "whether or not" it is "offered or sponsored by an educational institution."

11.)  The First Amended Complaint fails to show that Plaintiff's job as an Operations Technician: was part of a course of study or training; allowed her or other employees to earn a degree, diploma, certificate, or qualification to pursue a specific occupation or training; provides instructors, examinations, evaluations, or grades; or is regulated or accredited by entities that hold out the program as educational in nature.  (*See generally id.*); *Doe*, 850 F.3d at 556 (identifying characteristics of a program or activity that is educational).  The mere fact that Plaintiff attended a job training does not mean her employment is an "education program or activity" subject to Title IX.  *Roubideaux v. North Dakota Dep't of Corrs. & Rehab.*, 523 F. Supp. 2d 952, 973 (D.N.D. 2007) (on-the-job-training does not transform "program or activity" under § 1687 into "education program or activity" under § 1681).  Since Plaintiff has not demonstrated that her employment as an Operations Technician has an educational mission or features, she has not alleged her participation in an education program or activity to which Title IX applies.  *See* (ECF No. 16, ¶¶ 7-33); *Doe v. Univ. of Kentucky*, 357 F. Supp. 3d 620, 633-34 (E.D. Ky. 2019) (holding no Title IX protection for plaintiff who lived on university's campus and accessed its facilities but did not allege participation or enrollment in university's educational programs or activities); *Jackson v. Trustees of Univ. of Pennsylvania*, No. CV17-4645, 2019 WL 309729, at *4 (E.D. Pa. Jan. 23, 2019) (dismissing Title IX claim where plaintiff was not a university student, employee, or applicant and thus had no relationship to university's education programs or activities).  Without facts evidencing Title IX's application to Plaintiff's employment, her Title IX claim fails and must be dismissed.

### B.    Plaintiff cannot satisfy the elements of a Title IX sex discrimination in employment claim.

Title IX does not apply to Plaintiff's work as a TDOT Operations Technician.  But even if Title IX was implicated in this employment discrimination action, Plaintiff fails to state a Title IX

10

claim upon which relief can be granted.

Title IX does not provide a framework for analyzing claims of sex discrimination in employment. *See* 20 U.S.C. §§ 1681 *et seq.* Most circuit courts, including the Sixth Circuit, have addressed this deficiency by applying the Title VII standard for proving discriminatory treatment to claims arising under Title IX. *Arceneaux v. Vanderbilt Univ.*, 25 F. App'x 345, 346-47 (6th Cir. 2001) (collecting cases). Accordingly, Plaintiff here must allege that she: (1) was a member of a protected group; (2) was qualified for the job in question; (3) suffered an adverse employment action; and (4) was either replaced by a person outside of the protected group or was treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citation omitted). For purposes of element (3), an adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). An employee experiences an adverse employment action when he or she is fired, not promoted, or reassigned with significantly different responsibilities or benefits. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607-608 (6th Cir. 2019) (identifying actions that effect a materially adverse change in employment). "The Sixth Circuit has consistently held that *de minimus* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citing *Jacklyn v. Schering Plough Healthcare Prod.*, 176 F.3d 921, 930 (6th Cir. 1999) (neither requiring plaintiff to work from home while recovering from surgery nor denying computer expenses that had been previously approved were materially adverse employment actions)).

Plaintiff here cannot establish elements (3) or (4). (*See* ECF No. 16, ¶¶ 7-33.) The First Amended Complaint does not identify a termination, demotion, transfer, involuntary reassignment

11

or other significant and detrimental change in Plaintiff's employment. (*See id.*) The First Amended Complaint also fails to identify a comparable male Operations Technician that was treated more favorably than Plaintiff. (*See id.*)

Instead, the allegations here are suggestive of a Title IX deliberate indifference claim. (*Id.* at ¶ 38 ("Defendant had actual notice of its discriminatory policies on the basis of sex and was deliberately indifferent"), ¶ 39 (Plaintiff suffered and continues to suffer . . . pain as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX.").) But the deliberate indifference standard is inapplicable in an employment discrimination action such as this. *See Ivan v. Kent State Univ.*, No. 94-4090, 1996 WL 422496 at *2 (6th Cir. July 26, 1996) (adopting Title VII's *prima facie* case and burden-shifting framework for employment discrimination claim brought under Title IX). By design, the Supreme Court's deliberate indifference cause of action under Title IX creates a "high standard" that applies only "in certain limited circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). The *Davis* deliberate indifference standard imposes liability on a school only where the school has actual knowledge of sexual harassment that is "severe, pervasive, and objectionably offensive" and the school is nevertheless "deliberately indifferent to [the] sexual harassment." *Davis*, 526 U.S. at 650 (emphasis added). But the Tennessee Department of Transportation is not a school. *See* Tenn. Code Ann. § 4-3-2303 (charging TDOT with "develop[ing] and implement[ing] a continuing, comprehensive, and multimodal statewide transportation plan" and "plan[ning], propos[ing], and coordinat[ing] transportation related policies, activities and programs among state departments and agencies within the state."). And Plaintiff does not allege that it is. (ECF No. 16, ¶ 2 (describing TDOT as "a department and/or political subdivision of the State of Tennessee").) Nor does Plaintiff seek damages because TDOT's deliberate indifference "effectively barr[ed her] access to

an educational opportunity or benefit." *Davis*, 526 U.S. at 633; (ECF No. 16, ¶ 39) (complaining that TDOT's deliberate indifference caused her "emotional distress, humiliation, embarrassment, and pain"). Plaintiff's description of the Department, her characterization of the litigation,[4] factual allegations, and requested relief all indicate that *Davis*' deliberate indifference cause of action does not apply here. Since Plaintiff has not pled facts consistent with the four elements of the governing legal standard, her Title IX sex discrimination claim fails and must be dismissed.

## III. PLAINTIFF FAILS TO STATE A TITLE VII HOSTILE WORK ENVIRONMENT CLAIM BECAUSE THE FACTS ALLEGED ESTABLISH THAT TDOT APPROPRIATELY RESPONDED TO PLAINTIFF'S REPORT OF SEXUAL HARASSMENT.

To state a hostile work environment claim based on sexual harassment, Plaintiff must allege facts showing: (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Brown v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000). The legal standard for element (5) depends on the status of the harasser. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). When "the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id*. To satisfy this negligence standard, "the complainant must show that the employer knew or should have known of the offensive conduct but failed to take appropriate corrective action." *Id*. at 453-54 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 799 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998)).

Plaintiff's hostile work environment claim fails because she does not allege facts satisfying element (5). The hostile work environment claim here is premised on harassment by Marty Dillon,

---

[4] Plaintiff styles her lawsuit as "an action for unlawful employment practices." (ECF No. 16, ¶ 4.)

13

one of Plaintiff's co-workers. (ECF No. 16, ¶ 9-11.) Plaintiff proceeds under an actual notice theory, contending that TDOT "failed to promptly remedy harassment when reported." (*Id.* at ¶ 33.)[5] Indeed, the forms of harassment presented here—"graphic and explicit text messages" and an occasion not alleged to have occurred at work or in the presence of TDOT employees where Dillon grabbed and held onto Plaintiff—do not support an inference that TDOT should have known about the harassment before Plaintiff reported it. (*Id.* at ¶¶ 10-11); *see Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999) (explaining that constructive notice occurs in two situations: "where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it."). The absence of allegations concerning previous harassment complaints against Dillon further prevents a reasonable inference that TDOT had constructive notice of the harassment Plaintiff experienced. *See* (ECF No. 16, ¶¶ 5-37); *Kunin*, 175 F.3d at 294.

More important than what the First Amended Complaint fails to allege is what it establishes about the Department's response to Plaintiff's sexual harassment complaint. Despite Plaintiff's subjective conclusion that TDOT "failed to promptly remedy harassment when reported," *id.* at ¶ 33, the alleged facts and attached exhibits indicate otherwise.[6] The Department first learned of

---

[5] *See also id.* at ¶¶ 61-62 (asserting that "Plaintiff reported and/or protested incidents of harassment and assault to her employer . . . . [but] Defendant failed to remedy" the harassment).

[6] Attached to this Motion are three exhibits: Exhibit A–Plaintiff's Workplace Discrimination and Harassment Intake Form; Exhibit B–Email regarding Marty Dillon's transfer to Nashville; and Exhibit C–Marty Dillon's termination letter. Although a Rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Because Plaintiff's contention that TDOT failed to timely and sufficiently respond to her complaint against Dillon is at the heart of her Title VII claim, TDOT's remedial steps and their dates are central to this claim.

14

Dillon's sexual harassment, which occurred almost exclusively through text messaging, when Plaintiff reported it on December 28, 2018, and provided TDOT with the offensive text messages. (*Id*. at ¶¶ 10-12); Ex. A. The facts here show that TDOT responded to Plaintiff's complaint by: immediately separating Plaintiff from her alleged harasser and transferring Dillon from the Franklin office; conducting an investigation in which "[Plaintiff] fully participated"; interviewing Plaintiff and other witnesses; obtaining the offending text messages and a statement from Plaintiff; promptly completing its investigation and notifying Plaintiff on January 23, 2019, of its determination that Dillon had violated TDOT policy; sending Dillon a February 4, 2019 termination letter; and informing Plaintiff of its decision to terminate Dillon. (*See id*. at ¶¶ 12-13, 18-20); Exs. B-C. Moreover, the remedial actions TDOT undertook were effective: once Plaintiff reported Dillon's conduct, she experienced no further sexual harassment. (*Id*. at ¶¶ 12-33); *Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 631 (7th Cir. 2019) ("There is no question that stoppage of harassment shows effectiveness") (citation omitted). Under these facts, TDOT's response to Plaintiff's complaint against Dillon cannot be considered negligent, and Plaintiff thus fails to satisfy an essential element of a hostile work environment claim. Dismissal of Plaintiff's hostile work environment claim under Rule 12(b)(6) is therefore warranted. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (dismiss for failure to state a claim is appropriate when the complaint lacks direct or inferential allegations respecting each material element of a claim).

## CONCLUSION

The State's sovereign immunity deprives this Court of jurisdiction over Plaintiff's four state-law claims. Plaintiff's Title IX claim fails because she has not and cannot demonstrate that her employment at the Department is an education program or activity subject to Title IX. Plaintiff's hostile work environment claim similarly fails because the alleged facts illustrate that

TDOT appropriately responded to Plaintiff's complaint of sexual harassment. The Court should therefore dismiss each of these claims.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

  *s/ Colleen E. Mallea*
Colleen E. Mallea, BPR #032238
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-2472
colleen.mallea@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2020, a copy of the foregoing **Memorandum of Law in Support of Motion for Partial Dismissal of First Amended Complaint** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Heather Moore Collins
Collins & Hunter, PLLC
7000 Executive Center Dr. Suite 320
Brentwood, TN 37027

Parties may access this filing through the Court's electronic filing system.

  *s/ Colleen E. Mallea*
Colleen E. Mallea, BPR #032238
Assistant Attorney General

16