IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAVONE CHAPMAN-ROBBINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TENNESSEE DEPARTMENT OF ) <br> TRANSPORTATION, ) <br> ) <br> Defendant. ) | NO. 3:19-cv-01128 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Partial Dismissal of First Amended Complaint (Doc. No. 20, "Motion"), supported by a Memorandum of Law (Doc. No. 21, "Defendant's Memorandum"). Plaintiff filed a response in opposition (Doc. No. 23), and Defendant filed a reply (Doc. No. 24).

## BACKGROUND[1]

This action was filed by Plaintiff against her employer, the Tennessee Department of Transportation ("TDOT"), alleging harassment and retaliation in violation of Title IX of the Educational Amendments of 1972 ("Title IX"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Tennessee Human Rights Act ("THRA"). Plaintiff has also alleged the state-law torts of assault and battery and intentional infliction of emotional distress.

Plaintiff began work for TDOT in its Franklin, Tennessee shop on October 28, 2018, as an operations technician. Almost immediately after starting work at TDOT, Plaintiff began to receive

---

[1] Unless otherwise noted, the facts in this background section are taken from the First Amended Complaint (Doc. No. 16) and are taken as true for purposes of the Motion.

graphic and explicit text messages from a co-worker, Marty Dillon. These text messages contained disturbing images and texts that Plaintiff experienced as sexual harassment. Dillon also physically assaulted Plaintiff. Plaintiff and another female employee complained about Dillon's behavior, and TDOT investigated. TDOT transferred Dillon from the Franklin shop to a TDOT location in Nashville, but even after Dillon's transfer, TDOT assigned Plaintiff to training where Dillon was present. After Dillon's transfer, one of her supervisors harassed Plaintiff for causing him to lose "one of his best guys." Eventually, TDOT fired Dillon and reported to Plaintiff that it had found that Dillon violated TDOT policy. After he was fired, Dillon sent threatening texts to Plaintiff, which she reported to TDOT, but TDOT took no action. As of the time the First Amended Complaint was filed, Dillon was continuing to come by the Franklin TDOT location at times to speak to supervisors and employees. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge about this harassment and retaliation on January 31, 2019, after which she experienced further retaliation in the form of less-favorable job assignments and cessation of assignment to group or team tasks.

The First Amended Complaint asserts the following:

Count I - violation of Title IX

Count II – violation of the THRA (sexual harassment)

Count III – violation of the THRA (retaliation)

Count IV – common law assault and battery

Count V – intentional infliction of emotional distress

Count VI – violation of Title VII (sexual harassment)

Count VII – violation of Title VII (retaliation)

Via the Motion, TDOT asks the Court to dismiss Plaintiff's THRA and intentional tort claims for lack of subject-matter jurisdiction, based upon sovereign immunity under the Eleventh Amendment; to dismiss Plaintiff's Title IX claim because Plaintiff is not protected by Title IX in this instance or, alternatively, because she cannot establish the elements of a Title IX sex discrimination/harassment claim; and to dismiss Plaintiff's Title VII hostile work environment claim because TDOT responded appropriately to Plaintiff's complaint.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

3

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

To support a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of

4

thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## STATE LAW CLAIMS

In response to the Motion, Plaintiff has agreed to dismiss her state-law intentional tort claims. She argues, however, that her THRA claim should remain. (Doc. No. 23). TDOT argues the THRA claim must be dismissed based upon sovereign immunity.

Although the Tennessee Legislature has waived its immunity to THRA suits in Tennessee courts, it has not done so for suits in federal courts. *Hemenway v. 16th Judicial Dist. Attorney's Office*, No. 3:15-cv-00997, 2020 WL 6364486, at *5 (M.D. Tenn. Oct. 29, 2020). Federal courts in Tennessee have consistently held that suits against state entities brought by individuals under the THRA in federal court are disallowed by the Eleventh Amendment. *Miller v. Tennessee Dep't of Human Servs.*, No. 3-15-1025, 2016 WL 3213641, at *3 (M.D. Tenn. June 10, 2016); *Banerjee v. Univ. of Tenn.*, No. 3:17-cv-526, 2019 WL 7283128, at *3 (E.D. Tenn. Jan. 16, 2019).

Plaintiff argues that where, as here, there are valid federal claims establishing jurisdiction, this Court has the power to hear pendent (supplemental) state law claims. That may be true in general, but this case involves a THRA claim against a state entity covered by the Eleventh Amendment. Nothing about the 2014 Tennessee legislation cited by Plaintiff changes the holdings of the above-cited cases, all of which were entered after 2014. Any alleged "preference" for federal jurisdiction in cases based on "a common nucleus of operative facts" cannot overcome the well-established doctrine of sovereign immunity. Supplemental jurisdiction cannot override Eleventh Amendment immunity in this case; supplemental jurisdiction can be a basis for subject-matter jurisdiction over state claims, but even with subject-matter jurisdiction, a court's authority to hear

5

a claim is always subject to Eleventh Amendment immunity.[2] *See, e.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("The sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction."); *Watson v. Texas*, 261 F.3d 436, 440 n.5 (5th Cir. 2001) (noting that "Eleventh Amendment immunity is jurisdictional in character" and that the "mere presence of a jurisdictional basis cannot defeat the Eleventh Amendment, lest the Amendment become a nullity."). And such immunity exits here. As this Court has put it, "Federal courts have repeatedly and consistently held that the state and its agencies are immune under the Eleventh Amendment from suit in federal court under the THRA and the state has not waived such immunity." *Ritenour v. Tenn. Dep't of Human Servs.*, No. 3:09-0803, 2009 WL 10664196, at *1 (M.D. Tenn. Nov. 6, 2009). Perhaps a more precise way to put it is what is seen in cases like *Boinapally v. Univ. of Tenn.*, 23 F. App'x 512, 515 (6th Cir. 2001): courts recognize state agencies to be immune from suit in federal court and recognize no waiver by the state of such immunity with respect to claims under the THRA.

Accordingly, Plaintiff's state-law claims, including those under the THRA, will be dismissed.

---

[2] Notably, this is true whether Eleventh Amendment immunity is deemed to defeat subject-matter jurisdiction, to defeat personal jurisdiction, or to constitute some sort of affirmative defense. *See Stewart v. Gusman*, Civil Action No. 07-4132, 2009 WL 10679822, at *4 n.2 (E.D. La. Jan. 5, 2009). This issue, it is worth noting, has long been a debated question without a clear answer from the Supreme Court. *See id.* For its part, as noted above, the Sixth Circuit has stated that the Eleventh Amendment acts to deprive a federal court of subject matter jurisdiction, *Russell*, 784 F.3d at 1046, but it has also previously discussed several ways in which Eleventh Amendment immunity is not treated like the absence of subject-matter jurisdiction, including the fact that unlike the absence of subject-matter jurisdiction, Eleventh Amendment sovereign immunity can be waived by the State through its own conduct, such as by legislation, by removing an action to federal court, or by appearing without objection and defending on the merits. *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).

# TITLE IX

Title IX provides that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance. 20 U.S.C.A. § 1681. TDOT does not assert sovereign immunity with respect to the Title IX claims, but in any event Congress has abrogated Eleventh Amendment immunity with respect to Title IX. *Franks v. Kentucky Sch. for the Deaf,* 142 F.3d 360, 363 (6th Cir. 1998).

TDOT asserts that Plaintiff was not excluded from participation in, denied the benefits of, or subjected to discrimination under any *educational* program or activity at TDOT. Plaintiff asserts that because TDOT receives federal funding, Title IX covers *all* of TDOT's programs and activities, not just TDOT's *educational* programs and activities.

Judge Trauger of this Court recently dealt with this issue in *Roach v. Montgomery Cty. Gov't*, No. 3:19-cv-00698, 2020 WL 7231626 (M.D. Tenn. Dec. 8, 2020). There, the court stated that the mere fact that Montgomery County receives federal funds and that it offers some educational and training programs to both citizens and employees does not mean that an employment discrimination claim against the county automatically falls within the scope of Title IX. *Id.*, 2020 WL 7231626, at *5. "That is, Title IX simply does not apply to claims that do not involve discrimination related to education or training." *Id.* at *6 (citing *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 553–54 (3d Cir. 2017) (recognizing that, with the passage of the Civil Rights Restoration Act of 1987, Congress broadened the definition of "program or activity" but

7

nonetheless "retained in § 1681(a) the modifier 'education' before 'program or activity'")).[3] In *Doe*, the court held that a program or activity under § 1687 is an *education* program or activity under § 1681(a) if it has features such that one could reasonably consider its mission to be, at least in part, educational. *Doe*, 850 F.3d at 555. Even though "program or activity" includes all operations of the state government agency that receives federal funding, 20 U.S.C. § 1687, an "educational program or activity" under 20 U.S.C. § 1681(a) has "features such that one could reasonably consider its mission to be, at least in part, educational." *Doe*, 850 F.3d at 555. Without such features, an alleged "educational program or activity" does not actually qualify as an "educational program or activity"

In *Roach*, the court found that plaintiff did not allege discrimination in the operation of any education program or activity by Montgomery County. *Id.* "Consequently, Title IX is not implicated, and the defendant is entitled to summary judgment in its favor on the plaintiff's Title IX claim." *Id.* Similarly, here, Plaintiff does not allege that the harassment and retaliation occurred in connection with any education program or activity by TDOT; rather, the alleged harassment and retaliation occurred in the course and scope of her employment as an operations technician. Plaintiff has not alleged factual matter plausibly suggesting that her job "has features such that one could reasonably consider its mission to be, at least in part, educational."

---

[3] The court noted that its position was "in step with how twenty-one federal agencies, including the Departments of Education and Health and Human Services, have interpreted the statute." *Doe*, 850 F.3d at 555.

For these reasons, even though TDOT receives federal funding and is covered by Title IX as a general matter, *Plaintiff's claims* are not covered by Title IX because they did not arise from an educational program or activity. Therefore, Plaintiffs' Title IX claims will be dismissed.

## TITLE VII HOSTILE WORK ENVIRONMENT

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Wyatt v. Nissan N. Am., Inc.*, No. 3:17-cv-1545, 2019 WL 6682197, at *3 (M.D. Tenn. Dec. 6, 2019) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986)). TDOT does not assert Eleventh Amendment sovereign immunity as to Plaintiff's Title VII claim, and any such assertion would have failed in any event, given that in Title VII Congress abrogated such immunity for claims "against a state in its capacity 'as employer.'" *See Savage v. Maryland*, 896 F.3d 260, 275 (4th Cir. 2018) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, (1976)).[4]

---

[4] One might wonder how Congress, by statute, can override immunity that otherwise is constitutionally required. *Fitzpatrick* provided the answer, explaining that the Fourteenth Amendment provided Congress the power to do such abrogation by mere statute rather than by constitutional amendment:

> [W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, *see Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890), are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

To establish a claim of hostile work environment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on a protected class; (4) the harassment created a hostile work environment; and (5) employer liability exists for such harassment. *Wyatt,* 2019 WL 6682197, at *3. The last element, employer liability, entails a showing that "the defendant knew or should have known about the harassment and failed to act." *Id.* (quoting *Shoap v. City of Crossville*, 321 F. Supp. 3d 839, 847 (M.D. Tenn. 2018)).

Analysis of the last element, the employer's liability, depends on the status of the alleged harasser. *Wyatt,* 2019 WL 6682197, at * 5 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). If (as in the present case), the alleged harasser is a co-worker, the employer is liable only if it was negligent in controlling working conditions. *Id*. An employer is directly liable for a co-worker's unlawful harassment if the employer was negligent with respect to the offensive behavior; that is, if the employer knew or should have known of the harassment yet failed to take prompt and appropriate corrective action. *Id.* The Sixth Circuit has held that application of this standard requires a plaintiff to show that the employer's response to the plaintiff's complaints about his or her co-worker manifested indifference or unreasonableness in light of the facts the employer knew or should have known. *Ellison v. Clarksville Montgomery Cty. Sch. Sys.*, No. 3:17-cv-00729, 2019 WL 280982, at *10 (M.D. Tenn. Jan. 22, 2019) (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013)).

---

*Fitzpatrick*, 427 U.S. at 456. It was in this same way that Congress abrogated Eleventh Amendment immunity with respect to Title IX claims. *See Franks,* 142 F.3d at 363 ("Therefore, since Congress made its intention to abrogate the states' Title IX immunity unmistakably clear, and it had the authority to do so pursuant to Section 5 of the Fourteenth Amendment, we hold that Congress successfully abrogated the states' Eleventh Amendment immunity from Title IX lawsuits.").

Plaintiff has not alleged that TDOT knew or should have known about Dillon's harassment of her prior to her reporting it, and she certainly has not alleged factual matter to support any such overarching allegation. As for TDOT's actions taken after learning of it (when she reported it), the First Amended Complaint alleges no factual matter—as opposed to bare conclusions—plausibly suggesting that TDOT failed to take prompt and appropriate corrective action or responded in a way indicating manifested indifference or unreasonableness in light of the facts the employer knew or should have known. In fact, Plaintiff's own allegations suggests the opposite. Plaintiff has alleged that after she made her TDOT complaint, TDOT transferred Dillon away from the Franklin work location while it investigated Plaintiff's claims and that she fully participated in that investigation; Plaintiff further alleges that TDOT issued a report of its investigation on January 23, 2019 finding a violation of TDOT policy and that TDOT thereafter terminated Dillon.[5] (Doc. No. 16 at ¶¶ 12-13, 18-20). The substantive allegations that Plaintiff does make—which are sparse—include no factual matter even tending to suggest that TDOT actions or inaction satisfy the applicable standard for it to be liable for Dillon's alleged actions.

Plaintiff also alleges that after she complained to TDOT, she was required to attend a training event where Dillon was present, Dillon sent her a threatening text after he was fired, and Dillon is still allowed to come around the shop where she works. She contends that she reported the threatening text to TDOT, who took no action.

TDOT took what appears, based on the First Amended Complaint, to be prompt action to transfer Dillon away from Plaintiff's worksite and to begin an investigation in which Plaintiff

---

[5] The First Amended Complaint does not say who allegedly violated TDOT policy, but in context the clear implication is that it was Dillon.

11

admittedly fully participated. Unlike in the case cited by Plaintiff,[6] Plaintiff has not shown that TDOT took no action for ten days, and TDOT did separate Dillon from Plaintiff and did initiate an investigation in a timely manner. Plaintiff's own allegations show that less than one month after she reported the misconduct, TDOT notified Plaintiff that it had found Dillon violated TDOT policy and TDOT fired Dillon. Plaintiff has not alleged factual matter that plausibly suggests TDOT failed to take prompt and appropriate corrective action or responded in a way that manifested indifference or unreasonableness in light of the facts TDOT knew or should have known.

TDOT asserts that once Plaintiff reported Dillon's conduct, she experienced no further sexual harassment. But the First Amended Complaint alleges that Dillon sent a threatening text message to Plaintiff after he was fired. (Doc. No. 16 at ¶ 21). She claims she reported the post-termination text to TDOT and no action was taken. (*Id.* at ¶ 22). Plaintiff also asserts that, at least at the time of the First Amended Complaint, Dillon comes by the Franklin TDOT location (where she still works) "frequently" to speak to supervisors and employees and TDOT has done nothing to stop that conduct. (*Id.* at ¶ 24).

Where the alleged harasser is not (or, in this instance, no longer) an employee of the defendant, an employer's liability depends on the plaintiff's sufficiently showing that the employer knew or reasonably should have known about the harassment but failed to take prompt and appropriate corrective action. *Leu v. Embraer Aircraft Maint. Servs., Inc.*, No. 3:10-0322, 2011 WL 1337405, at *8 (M.D. Tenn. Apr. 7, 2011) (citing *Wheaton v. N. Oakland Med. Ctr.*, 130 F.

---

[6] *Smith v. Rock-Tenn Servs., Inc.,* 813 F.3d 298 (6th Cir. 2016).

App'x 773, 786–87 (6th Cir. 2005)).[7] In order for alleged harassment by non-employees to be actionable against the defendant, the plaintiff must show that the defendant failed to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known. *Rawls v. Garden City Hosp.*, No. 09-13924, 2012 WL 762616, at *5 (E.D. Mich. Feb. 16, 2012). In other words, an employer may be held liable for harassment by nonemployees if the employer tolerates a discriminatory environment and fails to take steps to remedy known discrimination. *Williams v. Liberty Park of Am.*, No. 16-CV-10940, 2017 WL 3034633, at *4 (E.D. Mich. July 18, 2017) (citing *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669 (6th Cir. 2000) (prison could be held liable for hostile work environment created by prison inmates)). "In determining whether an employer should be responsible for a hostile work environment caused by a non-employee, courts consider the extent of the employer's control over the harasser and any other legal responsibility which the employer may have with respect to the conduct of the non-employees." *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 95 (D. D.C. 2019) (quoting *Martin v. Howard Univ.*, No. 99-1175 TFH, 1999 WL 1295339, at *3 (D. D.C. Dec. 16, 1999)).

Plaintiff contends that she reported the threatening text message she received after Dillon was fired. She has not alleged, however, that that post-termination text message made her work environment hostile, certainly not that this conduct was "severe or pervasive" enough to create an environment a reasonable person would find hostile or abusive. *See Wyatt,* 2019 WL 6682197, at *4. As for the post-termination visits by Dillon to the Franklin job site, Plaintiff does not allege

---

[7] Employers are liable for the actions of nonemployees only when they knew or should have known of the offensive behavior and failed to take immediate and appropriate action. *Akines v. Shelby Cty. Gov't*, 512 F. Supp. 2d 1138, 1146 (W.D. Tenn. 2007).

13

that she reported those visits as harassing or that those visits created a severe and pervasive hostile work environment for her. Thus, the Court finds that Plaintiff has failed to show that the post-termination allegations against Dillon, given the totality of the circumstances, created a hostile work environment for Plaintiff.

The Motion as to Plaintiff's hostile work environment claim will be granted.

## CONCLUSION

Based on the limited description of the alleged actions of Dillon, those actions are disturbing, to say the least. That is not in dispute on the instant Motion. The question here instead is whether Plaintiff has made factual allegations sufficient to plausibly suggest that TDOT is liable for those (alleged) actions under the theories raised in Counts I-VI. This question must be answered in the negative, for the reasons set forth herein.

Accordingly, TDOT's Motion for Partial Dismissal will be granted. Plaintiff's state-law claims (including those under the THRA), Plaintiff's Title IX claims, and Plaintiff's Title VII hostile work environment claim will be dismissed. Remaining for trial is Plaintiff's retaliation claim under Title VII (Count VII), a claim that TDOT did not move to dismiss. An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE